Next case on the call the docket is agenda number 19 case number 111 443 Sandholm versus Kuecker and if I'm not pronouncing that right please correct me. Counsel. May it please the court counsel we are here on appeal. Please state your full name. Oh I'm apologize I'm Steve Fiewiger and I represent the appeal of a dismissal and an affirmance of a dismissal of Mr. Sandholm's multi-count complaint for defamation per se for tortious interference with his expected continued employment and for invasion of his privacy rights based on the actions of the defendants in this case. This case has been dismissed solely on the basis of the application by the trial court and the appellate court of the Citizens Participation Act. We will show I believe in our brief and in our reply brief that this state statute is unconstitutional as applied by both the United States Supreme Court case in McDonald versus Smith and also under the right of remedy clause applicable under the Illinois Constitution article 1 section 12. In this case Mr. Sandholm was a 32-year educator and coach. Coaches get criticized all the time. They may make the wrong call they may make the wrong substitution of a player but that's not what he sued about. He sued because this group who were dissatisfied with the way he coached went too far and he was devoid of any true citizenship that he abused his players. They said it repeatedly on the internet in newspaper articles and on the radio and we submit that that is defamation per se and that they are not protected by the CPA in this situation. Section 15 of the act has now been interpreted by the second district to completely eliminate any public employees right to seek remedy for damage to their reputation as guaranteed under article 1 section 12 of the act. There is no scenario in which a public employee can now file an action for damages to his reputation or to his person because the defense will always be well section 15. I'm going to invoke that because I was genuinely aimed at trying to procure a favorable government result. Whether you're successful or not is not the issue. The issue becomes in this situation I'm trying to get help. I don't like this person. I hate this person. I hate this person with a passion. So what I'm going to do is I'm going to make up the biggest lie about this person and tell everybody on the internet, in newspapers, on TV, anybody who will listen to me. And that public employee not only will have no right to a defamation action, but he'll be responsible for payment of that tort fees or attorney's fees in the dismissal of that action. That is not constitutional. Under the U.S. Supreme Court case of McDonald versus Smith, decided in 1985, the United States Supreme Court recognized that the right to petition government for redress is not absolute. It did not elevate the First Amendment right to petition to an ultra status, to a status that's higher than the defamation laws existing in this country. In fact, the United States Supreme Court in addressing this issue noted that the framers of the First Amendment understood that the right to petition to include an unqualified right to express damaging falsehoods in the Supreme Court further stated to accept the petitioner's claim of absolute immunity would elevate the petition clause to a special First Amendment status, despite the fact that the petition clause was inspired by the same ideals of liberty and democracy that gave us freedoms to speak, publish, and assemble. Isn't that what the second district's second section 15 is doing here? Isn't it elevating the right to petition government for redress to an ultra level, to a higher level than what's guaranteed under the U.S. Constitution and as recognized under the McDonald decision? Counsel, how do you discuss or would you discuss for me the act's purpose is to, one of the participation in government to the maximum extent possible? Well, the maximum extent permitted by law, your honor, under both Illinois law in the Truman decision and under the McDonald case and the New York Times versus Sullivan case, slander and defamation do not enjoy First Amendment free speech rights or rights of petition. That's why it cannot be used as affirmative defense. What's that? I'm sorry. And that's why it cannot be used as an affirmative defense. That's correct. And your honor, in this case, we have no complaint filed in this about the fact that they presented this petition to the Dixon School Board. If you look at our pleading in this case, we attacked the fact that they went to the Rockford Register Star, that they went to the Internet and created this Save Dixon Sports website and republished this, and that they continue to do that and go on the radio with NRG and repeating these falsehoods. What they're saying here is we don't even have to petition government. Our speech is absolutely protected here. They're saying that this statute, as they interpret it, gives absolute immunity to any of their speech so long as they're trying to effect government change. That's not the intent of this legislature. The legislative comments are brief in this, and the debate is brief. But if you look at it, Mr. Franks, or Senator Franks said, or Representative Franks said, when questioned, are you trying to shut up the people who are doing the lawsuits, meaning somebody like Mr. Sanholm? What I'm saying, I'm trying to bring some sanity to it. This isn't what this does brings no sanity. It eliminates a complete cause of action guaranteed under Article I, Section 12 of the Illinois Constitution to all public employees. There is not one dog catcher, one Supreme Court judge, one governor, one, you name it, school teacher, who could ever survive a motion to dismiss their cause of action for interference with their employment, for defamation, or for invasion of their privacy if some citizen decides to create a website and just start slandering them on it. Because that person will come in and file a 216 motion to dismiss, citing Section 15 of the CPA, saying, I was just trying to genuinely effect government change. Well, that's not how this should work. And we've pointed out that there are 22 other states who have adopted these statutes, and they haven't interpreted them to give carte blanche absolute immunity to those who actually commit torts. If you notice, and you read in my brief, I believe in the reply brief at page 19 in 1819, the statutes themselves have been written in a way that allow the free speech and allow the participation in government, but do not shield the tortfeasor if they come in and abuse their discretion and abuse their rights in this situation, which is what we've alleged. There's been no finding by the trial court or the appellate court in this case that Mr. Sandholm's claims against these defendants were non-meritorious. You said in your decision last year in the right development group that the purpose of this statute was to protect citizens who had been the victims of meritless, retaliatory slap lawsuits. Well, who protects the individual from mob action in this situation? Who protects a public employee with a 32-year record that is spotless who has served children his entire career from being falsely accused of abusing those children that he has served for 32 years? Well, according to the defendants, no one. They have argued in this that this is an either-or and that the legislature decided by enacting this that the balancing test to be done here was simply the enactment of the statute. That's ludicrous. There's no balancing test by simply saying we're going to protect all tortfeasors. Section 5 of the Act specifically says that we are to do a balancing test. It says to balance the interest or to strike. It is the purpose of this Act to strike a balance between the rights of citizens to file lawsuits for injuries and the constitutional rights of persons to petition. Well, with the interpretation by the second district, the sole enactment of this statute has become the balancing test. Counsel, doesn't that mean then is it this Court's role to change that or is it up to the legislature to rewrite the statute? Well, I think that if you interpret the statute in light of McDonald and Smith, McDonald versus Smith, you don't have to rewrite this legislation. You can simply find that the case, that this statute does not protect tortfeasors. It does not protect people who actually act with defamation and speak falsehoods. Again, the right to petition government is not absolute. You will be responsible for your falsehoods. If in the course of petitioning government, you defame someone. And that's the reasonable balancing test that you can apply to Section 15 of the Act. Again, also in Section 15, it says the constitutional rights to petition. It is not constitutional to slander somebody. In McDonald and in the New York Times versus Sullivan, the First Amendment has never been expanded to provide absolute protection to a citizen who slanders another citizen. That's what's being done here. You have to interpret the statute as a whole. And when you look at the word constitutional, you have to go back and look at the cases that are decided under defamation law, what is constitutional and subject to a qualified privilege and what is not. And in this case, and in the McDonald case, the right to petition does not elevate and trump a citizen's right to be free from defamation. Why can't the legislature make that choice? Why can't the legislature make the choice that in their judgment, the balance should be struck on the side of the First Amendment rights and immunize them? And not only to make that balance, but to have that determination made on the pleadings at the motion to dismiss phase rather than what you're suggesting after evidence has been pushed out in a trial. Why can't the legislature do that? Because it's unconstitutional. Explain why, please. Because under the First Amendment, you don't have a right to trump somebody's rights to be free from damage to their reputation. McDonald says that. So does the Trowman case. There is no restriction on free speech in the Trowman decision, but it doesn't relieve the speaker from responsibility of that abuse. That is totally consistent with the U.S. Supreme Court decision. So you can't interpret a statute to trump somebody's constitutionally protected rights. It's just not legal. When a statute runs up against a constitutional provision and there's a conflict, the constitutional provision trumps. So the right to seek damages for defamation is a constitutional right? I believe so. It says so under Article I, Section 12. You have the right of remedy. But don't we have other kinds of causes of action, whether it's immunity? I'm thinking about tort immunity or something like that. Yeah, there are cases of that. But usually those are in the limit where the legislature has expressly stated its intent as to why under public policy we're going to give you immunity, such as in a public ‑‑ I'm drawing a blank. A tort immunity kind of idea. But a tort immunity act. But in this case, there's no discussion in the legislative history that any of these senators or representatives intended to allow this act to be used as a shield to defamation. There's no discussion in the legislative record. And the statute itself, Section 5, says under its express language we're going to do a balancing test of the right of citizens to bring an action for injury versus the right of citizens to participate freely in government. I understand your argument thus far. Is any part of your argument, counsel, surrounding your belief that this wasn't a legitimate intention to procure favorable government action or not? Yes. I think that's a question of fact in this, your honor, that the trial court and the appellate court completely failed to address. The word genuine is in the statute. It has to be a genuine attempt to participate in government. Is it genuine as a matter of law to come in and defame somebody? Is it genuine to go to someone's second-level boss, say, for example, at the Department of Revenue, and say Joe Smith this past weekend had sodomized four girls under the age of four? That's what we're opening this can of worms up to. I could then go and make an Internet posting on any public official in the state of Illinois and then slander the heck out of them. Do you agree or disagree that the decisions of a school district is government decisions? Well, yeah, but these aren't the governmental decision-makers. These are people going onto the Internet and urging a decision. We're saying that you can do it legitimately. You can engage in the free speech and right to petition. But as stated in the McDonald v. Smith case, that doesn't elevate your right to commit defamation. Are you arguing that all the comments have to be made at the school board meeting or at the district meeting? No, I'm not. I'm not. I mean, it's got broad language in Section 15. But what I am saying is there needs to be a determination on the get-go in this case under this statute whether the person injured's claim is meritorious or not. And that's what is completely glossed over here. What we've done is thrown the baby out with the bathwater simply by applying the Norr-Pennington Doctrine and expanding it to say, and Norr-Pennington Doctrine being an antitrust case, but to expand it to say any time you say that you're doing it with the intent to favor genuine government act There is no balance here in the way that the defendants argue it and in the way that the appellate court has interpreted it. Just one last question. You mentioned there were 22 other jurisdictions that have similar statutes and do not employ them in this way. Correct. They're the same set of facts. How would they have handled it? They would have allowed a brief evidentiary, in some states, a brief evidentiary presentation of facts, and then the court will decide whether or not it is a question of fact whether the tortfeasor was, quote, genuinely engaged in petitioning government versus did they abuse that right and did they defame? And we don't, we didn't do that in this case. Does that take into account whether there was anything they had in their background or anything that they knew or whatever? Or just the statements themselves. I mean, for example, I could have come in with an affidavit from numerous administrators that Mr. Sanholm worked with for the 32 years prior to this that would have said, in all my time in supervising him, I never observed him do this, that, or the other thing to any of these kids. And that could have created the issue of fact as to whether they were genuine in this case, whether they were constitutionally protected in this case. But that didn't happen. We're out on a 216, 2615 motion to dismiss, ignoring my argument that you have to first determine whether the injured person's claim is merit, has merit. And then analyze it from the other aspect of it under Section 15. Thank you, Mr. Feeweeger. Thank you, Your Honor. May it please the Court, Counsel Michael Scodro from the Office of the Illinois Attorney General, here on behalf of the intervener at Police State of Illinois. At the outset, I think it's essential to clarify one point that may have been somewhat conflated in the last presentation. There's a difference between, and this is to Justice Tice's question, there is a difference between not being constitutionally prohibited, being constitutionally prohibited from engaging in defamation, and the minimum requirements that Sullivan and McDonald require. All that Sullivan and McDonald say is that you don't have a constitutional right to engage in malicious slander. That's what those cases hold. That once you engage in malice, once you introduce that element, you're no longer constitutionally protected. What those cases do not hold, and are therefore totally, the reason they're totally irrelevant to the constitutional question before the Court, what they don't hold is that states can't go further and say that in the exercise of policymaking authority of the General Assembly, they cannot protect beyond the bare minimum announced constitutionally in those cases. The interpretive question before the Court today is whether or not that's what the General Assembly did. As we point out in our brief, there are two competing interpretations of the statute that we think are supportable on the constitutional text. The broader reading endorsed by the appellate court is the one that we think imports more readily with the statutory text and purpose. But we introduce the other as an alternative as well, and there's been no contention in this case that the alternative construction is in any way unconstitutional. And as we show in our brief, even under that alternative, the judgment below must be affirmed. The only practical difference between the two alternatives here, both of which are eminently constitutional and permitted by the U.S. Supreme Court doctrine, permitted by this Court's decision in Michigan Avenue National Bank, the core difference is what do these words, in furtherance of and regardless of intent or purpose, mean in Sections 15 and 20 of the Act? Do they mean that you're only immunized insofar as you engage in constitutionally protected conduct? And to apply that to this case, that would mean only insofar as you speak nonmaliciously. Or instead, do the words, in furtherance of, regardless of intent or purpose, in combination with the statement of purpose in Section 5 regarding utmost protection, the statement in Section 30 regarding interpreted broadly, whether or not in combination, those suggest instead that this is an immunity akin to the immunity that's been recognized in the legislative context, in the judicial context. And, Justice Thomas, to your question, consistent with the way Rhode Island has interpreted their statute in the Alaviz case, under those interpretations, what we have is an immunity that's not absolute. It's conditional. It's still conditional on a number of factors, and I'll come to those in a moment. I think that plaintiff has endeavored at times to suggest there are no limitations even under the broader reading, but there are serious limitations even under the broader reading. So maybe I should turn to those quickly now. Under the broader interpretation, the notion would be that, in furtherance of, and regardless of intent and purpose, in combination with the other phrases I've mentioned, suggests the General Assembly had intent to more prophylactic protection on the core constitutional rights that are listed in Sections 15 and 20 of the Act. And if that's the case, what it means, and especially the phrase regardless of intent or purpose, which is borrowed right out of the nor penitent jurisprudence. If that phrase means what it appears to me, such that malice is immaterial, for example, at this motion-to-dismiss stage under the Act, then what the here nonmovent plaintiff is left to do is to establish by clear and convincing evidence one of several things. He can show that this is a sham. And indeed, at times at the podium today, that is the suggestion that's being made, that this is a sham. It's not genuinely aimed at procuring favorable government treatment. That's an available defense, even under the broader reading of the statute. We know what that means. That phrase is taken verbatim out of the Supreme Court's decision in the City of Columbia, the Omni case at page 380. That very phrase appears. We know from that and from legislative history, should we even need to look there, that this is an effort to embody the Omni sham exception. We know what that means. It means we look and say, would a reasonable person, would a rational person conclude that these statements had a reasonable chance of procuring a desired government effect? And if so, then we proceed to ask, and was this speaker, in this case the defendants, were they subjectively motivated by that intent? Is that language ambiguous? I don't believe so, Your Honor. This Court's decision in Davidson, the appellate court's decision in In Re Marriage of Murphy that we cite in our brief, both of those make clear the longstanding doctrine that when a term of art is borrowed from pre-existing case law, and here it's not just a word or two, it's an entire phrase, the entire quote, genuinely aimed at procuring favorable government action is wholesale borrowed from page 380 of the Supreme Court's decision of 1991. It's what long predated the act. The anti-SLAPP statutes in other states specifically exclude torturous conduct, and Illinois statute does not. How does this omission affect our interpretation of the act? I would say two things in response to that, Your Honor. First, if anything, given that our act came as relatively new to the party in 2007, it may suggest that by not including that language, the General Assembly knew exactly what it was doing in asking for a broader, more prophylactic protection consistent with the language in Section 5 and 30 of the act. The second thing I would say about that is that as ambitious as this language is vis-à-vis other states, it's not alone. It's not alone vis-à-vis Rhode Island. Guam is talked about. This is all developed thoroughly in the brief of the amicus. And it's also not unprecedented when one considers cases, I'm sorry, one considers the existing common law or statutory immunities that are already recognized and are deed more absolute. There's no sham exception to speaking malicious falsehoods in a legislative proceeding, even from the gallery, or in a judicial proceeding. Pretty tough to prove, though, wouldn't it, Mr. Scodro? To prove a sham? I mean, actual malice with a public figure is a tough enough burden in and of itself, right? So now on top of that, opposing counsel will have to produce some type of evidence when it does. I mean, objectively, you want to get somebody out of the school district, right? So regardless of what you say, actual malice or not, you have to show that that was never really the objective intent of the person bringing the action. So that's a hurdle on top of actual malice, right? How would you show a sham? Give me a situation in which there would be a sham defense. Sure. To introduce, I'll provide two examples that came out in recent federal district court decisions. They're not in the briefs. They're more recent May and September decisions, in both of which northern district judges found that the plaintiff in those cases had satisfied the burden of establishing a sham exception. And so I would, I'll in a moment commend both of those to the court as examples where the sham exception has real teeth. But beyond that, I would say it is to be sure the sham exception, again, not the original creation of the General Assembly, borrowed from U.S. Supreme Court case law in the Nora Pennington Omni Professional Real Estate Investors line of cases is intended, I think, to be a high burden. In those cases, developed originally in the antitrust context, it's difficult, no doubt, for plaintiffs alleging antitrust violations to say that all of this government action is really nothing more than an effort at herding us through the acts, the speech itself. That is, they're not actually trying to get some genuine government action. It is by design a difficult standard. I don't think that speaks at all to the constitutionality of the question. Certainly not under McDonald or Sullivan, as I've pointed out. Those have left open this issue. The constitutional question he's really raising is one under the Article I, Section 12 that plaintiffs is advancing. And as we point out in our brief with Michigan Avenue National Bank, it's very difficult to claim that an act like this, which makes more difficult but does not wipe the slate clean, leaves the common law actions intact. Michigan Avenue National Bank was, if anything, there was a far harsher toning down or softening of the ability to bring claims in that case, and it was upheld. To Your Honor's question about examples, a case called She v. Loyola University Medical Center, which came out in May, and a case called Trudeau v. Consumer Affairs, in both cases, the court said, first, under Erie, this is a substantive law, and therefore applied, a federal court sitting in diversity applied our anti-slap law. And it went on to conclude in both cases that the complaint could proceed because they simply didn't believe the actions in these cases. One was an employment review. Another was a criticism of the consumer advocate, Mr. Trudeau, that in neither case were they really aimed at government action. They were aimed at defaming this person. And the connection simply wasn't there. And in both cases, the court had no problem in concluding that the sham exception applied, notwithstanding the fact that you have 90 days to establish it, and notwithstanding the fact. Yes, sir. Sorry to interrupt, but your time's expired, and your group's got plenty of time to argue. Yes. Thank you, Your Honor. We would ask that this court, under either interpretation, uphold the law and conclude that the easier interpretation is the one rendered by the Second District. May it please the court, Michael Lieber, counsel for NRG Media and Al Nickram, on behalf of the defendant, Apeliz, and cross-appellants on the attorney's fees issue. Mr. Lieber, before you get started, let me follow up on Justice Thomas's question. One of the points that Mr. Feeweaver's argued, he's argued many, I'm not representing his whole case here, but I just want to posit this question. On a 2615, is that a vehicle that in terms of the question about the sham defense or to prove that this is or is not a genuine attempt to seek government support, does the trial court have a viable option or opportunity to determine that in a 2615? It does, Your Honor. Explain how. At the time that we filed this, this predated the concurrence in the Wright decision, which indicates that the more proper way of bringing these motions would be under 2619A9. There was no challenge to the appropriateness either at the trial court level by the plaintiff to the mechanism of bringing it as a 2615 motion. The act itself has a mechanism that says as soon as  based on the CPA's protections is filed, it has to be accomplished and also allows for a certain level of discovery. Discovery is otherwise stayed in the case but remains open for the purpose of getting into the genuineness of the movement's intent when they spoke their allegedly defamatory speech. In this particular case, the plaintiff did not avail himself of an opportunity to take any depositions, any discovery or lack thereof of my clients and the other appellees' speech. Maybe I should have asked Mr. Scodro this, but does the act require that the protected speech be directed towards the governmental body itself? No, Your Honor. It is more broad than that. It is more broad than that. Because it says in furtherance, it talks about and it does go beyond the four corners of the meeting room. It sounds like today Mr. Fiewiger is acknowledging that it does. As a matter of fact, in this Court's right decision from last October, the speech was related to comments made by somebody to a newspaper. And in that particular instance, the Court held that speech to a particular newspaper because it could go out to the condo board, because it could go out to the alderman, the population at large. It is protected. And as a matter of fact, the definition of government in the CPA includes speech aimed at the electorate. So here, for example, we have both the speech of the townspeople who were speaking out regarding the conduct of the coach and also the speech of the radio station and its general manager, which were, again, in furtherance of the townspeople's attempts to petition the government. Just following up a little bit on Chief Justice Kilbright's question, I was asking Mr. Skodro about cases in which sham has been proven, but in this case, for the 2615 motion, your position has to be that allegations where it was brought before the board to try to remove somebody from the school, and that didn't succeed, right? And then the facts, as I understand it, is there was print and radio content that they're alleging is defamatory. The fact that they went from the meeting didn't take the answer from that meeting as being sufficient and went on, that in and of itself would not be able to support the sham exception, right? Is that what you're saying? That's correct because this was all part of a process. As the appellate court recognized, trying to effectuate some kind of government change such as the removal of a teacher or a coach might be more than just attending one meeting and speaking one's mind. So let's use, rather than look at other cases, let's use this case. What would have had to have been alleged? Give me a set of circumstances in this case, hypothetical as they may be, in which there would have been allegations that it would support a sham exception. Well, let's say that one of the townspeople, instead of speaking out or sending an email to the local superintendent, went to visit relatives in Florida and was complaining to those relatives in Florida saying how awful the coach is, how he needs to get fired. Well, that's certainly not in furtherance of any kind of government change. So that wouldn't meet the first of the three tests that the appellate court adopted based on its reading. And they would have alleged that in their complaint? And they would have alleged that in their complaint. That would be defamation. It would be publishing defamatory. How do you look at opposing counsel's argument, then, that even if there is a sham, all you have to do to circumvent that sham is to make it a government action? To say, well, we want this guy out. We have an axe to grind with this guy. Let's go to the meeting. They're not going to support us. And then we'll go tell Grandma in Florida. And then we'll go to the press. You see what I'm  I do, Your Honor. And because of the three-part test that first looks at, is this in furtherance of some kind of government action? Second, would the objective reasonable person believe that this action is reasonably likely to procure some kind of government action? And then the third part is the subjective belief of the actual speaker. Do they subjectively intend to achieve some kind of government action? I think in your particular question, we focus on the second part, which is, well, the objective reasonable person would not believe that if you're simply going down to Florida and telling your relative about this complaint, it's going to achieve any kind of government change. You need to go to the school board and make yourself known. You need to go on the airwaves. You need to write letters to the editor. You need to do all these different things, not only before the meeting in drafting and getting a petition signed, but after the meeting, if at the first instance the school board says that they are not going to take action. And that's exactly what happened here. Is it your position, I guess it is, do you really believe the intention of the legislature here was to protect defamatory speech? And even looking at it with respect to the sham, if counsel was allowed to go through and say, well, let's have a trial here first on the issue of defamation. And I will use the fact that defamation is really what's at issue here. Lies were brought before this board. Lies were, you know, spewed on the internet. Lies were put in the print and radio. And he prevails on that, right? If he was allowed to prevail on that, that it was defamatory, that would support a sham, wouldn't it? No, Your Honor, I don't believe it would. I think it was, you know, to answer your initial question, I believe it was the legislature's intent to protect people who are facing allegations of defamation. If we accept Mr. Sandholm's approach of saying we need to in every instance take a deep dive into the merits of whether there is defamation, well, that means a merits-based opinion. That means a trial on the merits, which completely eviscerates the purpose of the CPA, which is to do away with lawsuits based on allegations of defamation. The only way to know if something is defamation is to have a trial on the merits. So the issue of defamation is defamatory. If you agree with opposing counsel that the Act does not protect malicious conduct, malicious statements? I believe it protects even malicious statements, even allegations, even statements that are alleged to be malicious. Well, using his example of someone that works for government and somebody that goes to their supervisor and makes some very serious allegations that might involve criminal conduct, is that I mean, if they're trying to get rid of this guy, is that a protected speech? Well, I think in each instance, and it's a case-by-case analysis, you go to that three-part test. You first look at whether it applies to some kind of government action in the example that Your Honor just gave. I believe it does. You would then look to see whether those allegations and, frankly, the more outlandish the allegations are, one could argue that the objective reasonable person would believe that those would not result in any kind of government change. Lying about somebody sodomizing four girls, something that is so easily provable to be false would actually have the exact opposite effect that the speaker had. It wouldn't harm the person who faced the allegations. And, again, there can be discovery, limited discovery, on the subjective intent of the speaker. If the speaker has told other people, hey, I want this guy out, but more than anything I just want to box him into a lot of litigation. I know he doesn't have a lawyer, so what I'm going to do is I'm just going to bring this complaint and in that particular instance the subjective test would allow the defamation lawsuit to continue. So how does that work in a practical vein with the statute as it is? What would happen is if somebody files a lawsuit for defamation, in this case, I mean we can certainly take this case as an example, somebody files a lawsuit, then the defendant believing that their acts were either petitioning speech or participation in government or in furtherance of petitioning speech, and were done for bona fide reasons to effectuate government change, as the complaint even alleges here. The complaint never alleges that our clients didn't do this for a bona fide reason. The complaint at the record at page C-362 says the defendants engaged in a campaign to have him removed from his positions as coach and athletic director. So there's no question here that the sham exemption would not apply. But what would happen is, if the defendants believe that the CPA protects them, they would then file a motion to dispose of the case. We filed a 2615 motion based on the concurrence and right from Justices Freeman and two other Justices. I believe probably the more appropriate route would be a 2619A9 motion, although in this particular instance, either way would not have affected the ultimate outcome, particularly given that the Act itself allows the plaintiff to take limited discovery. In this case, the plaintiff took no discovery. Well, the public policy provision under the Act  the rights of citizens are vital to effective law enforcement, the operation of government, dot, dot, dot. The appellate court, although they ruled in your favor, indicated they think the Act went too far in protecting malicious speech. And there's somewhat of a cry to the legislature here, isn't that right? Your Honor, both the trial court and the appellate court said this statute is broad. It is more broad than some slap statutes. Your Honor asked the Solicitor General earlier whether this is a or asked Mr. Fiewiger, I believe, how this would be applied. In certain states, the anti-slap statutes are equally as broad. As the Solicitor General mentioned, Rhode Island, Maine, has an equally broad statute. Rhode Island's is written almost identical to Illinois. Actually, it lays out the sham exception in a little more detail following the North Pennington doctrine. Guam does as well. And incidentally, since we filed this lawsuit, 22 states had at that point Illinois became the 22nd state. At the time of this court's right development decision in 2010, there were 24. Now it's up to 26 in one territory. There are actions outside of defamation that could be dismissed under the Citizens Participation Act based on just what I said, opinions, reports, whatever, right? Yes. And this court certainly could find, if we find that that wasn't either the legislative intent or that they've gone too far, as the appellate court already said, that it's unconstitutional as applied to alleged defamatory speech, right? I don't believe that's correct, Your Honor, because, again, to decide whether, to take the approach of asking whether this is allegedly defamatory speech, in any case that has a count for defamation, it's going to allege defamatory speech. So that essentially, that analysis kind of puts the cart before the horse and gets us right back to where we were with the situation that I discussed earlier on, that you have to go to a trial on the merits in order to reach that decision. And the entire point of this and all SLAP statutes is to get the public heartache of being sued because they chose to participate in government actions. When we look at Section 5 of the statute that lays out the purpose of the act, many Illinois legislative acts are quite dry. This one, while not quite the Gettysburg address, announces some pretty important principles for citizens of Illinois. The right to speak freely. The right to not have to fear the chilling effect of a lawsuit when you decide you want to participate in government. When you decide you want to go to a school board meeting and say you don't think the school is being very good. When you decide you don't think the school      have to fear the chilling effect of a lawsuit when you decide you want to go to a school board meeting and say you don't think the school is being very good. When you decide you want to go to a school board meeting and  don't    fear the   a lawsuit when you decide you want to go to a school board meeting and say you don't think the school have to fear the chilling effect of a lawsuit when you decide   go to a     fear the  effect of  lawsuit when you decide you don't want to go to a school board meeting and don't fear the chilling effect of a lawsuit when the trial court decided to grant a narrow sliver of fees just those fees related to the drafting and argument of the C.P.A. portions of the dismissal motion it did the exact opposite  the motion of the government and to avoid the chilling effect of these suits now if we look to the legislature if we decide that the in connection with the filing of the motion language is a very narrow approach both in our case and in the Hytel group case if you look at that language in connection with and you look at the legislative history all the examples of abuse that are talked about not only by the state representatives talking about people being sued for speaking out talk about being sued for running because they ran for public office because they were fighting some zoning issue they talked about the fees that people would face and they didn't talk about the fees that they were facing on that narrow sliver of a portion of their motion to dismiss they're talking about the fees that people face when they face these lawsuits that is what drives the CPA that is what has driven anti-slap statutes now in 26 states and one territory that is the purpose it's to make people aware    state is not going to have the feasible hold because of the trial court's decisions my clients would recover 15 percent fees other codependents would get up to 30 percent but then they end up the losers and that's exactly what it's not designed to do thank you your honor I will work backward from the fee issue first that is a creature of statute in this case and on the American rule generally speaking parties are responsible for their own attorney's fees if you're going to start applying the statutory language you have to comply with it in this statute it says that the determination of this motion is to be made within 90 days of the filing of the motion the hearing and decision were to be made by October 6 2008 the trial court made the decision on December I believe 21st somewhere in that neighborhood of 2008 there's no jurisdiction for attorney's fees in this case the court has to follow the statute I don't care that I raise 15,000 separate motions about this constitutionality of this statute during the course of trying to protect my client's rights in this situation that's my prerogative as an attorney it's the court who is required by this express statutory language to render the decision in 90 days it didn't there's no grounds for an award of attorney's fees at all based on the statutory language further this court is bound to consider the consequences that would result from construing the statute in the manner in which the defendants and the state argues here in both Solon versus Midwest Medical Records and in Kasson versus Ring this court has held that when the literal enforcement of a statute would result in great injustice and lead to consequences which the legislature could not have contemplated the courts are bound to presume that such consequences were not intended and will adopt the construction which it may be reasonable to presume was contemplated by the legislature the legislative history in this case is completely silent as to the discussion of doing away with the rights of public employees to pursue their constitutionally protected rights to be free of defamation to be free of interference with their employment and to be free from an unreasonable invasion of their right of privacy the reasonable interpretation that this court can give to this statute as a whole is to effectuate the balancing test is to give the person harmed the right to show that he has the meritorious claim and proceed with it on a 216 motion to dismiss I had no right to discovery in fact if you look at the record in this case I asked for and served written discovery on the defendants in this case and an order was entered barring me from doing that I had no right under the 615 motion to conduct any discovery on this sham exception at all then I'm being whipsawed on the 216 2615 motion by saying well you can't prove a sham therefore you're out that's not what the legislature intended here the legislature intended a balancing test between the rights of citizens to speak freely and go to the public versus the rights of that citizen being affected by it to protect his or her reputation the interpretation urged by the state and urged by these defendants completely obliterates that in this case some of the other problems I have with this argument is what if for example I just went and started doing letters to the editor and I never participate in going to a governmental action namely I start a campaign against the Rock Island chairman of the board and just start writing letters to the editor in the Argus in the Quad City Times to the Chicago Tribune accusing him of being a sodomist well I never went to a board meeting I never went and filed a petition accusing him of that and asking for his removal all I did was write to the editor and accuse him falsely of that under their interpretation of this law that's absolutely protected because I was attempting in that situation to genuinely affect government change that can't be what Omni stands for further they flunked the test under Omni their petition was heard and denied at the school board they didn't go back to the school board and start re-petitioning they started a smear campaign let's create Save Dixon Sports and start telling them how he abuses children let's write a letter to the editor of the Rockford Register Star and say this is not about his coaching ability it's about verbal abuse and bullying tearing down players telling them they're no good humiliating them getting in their face from inches away and shaking his finger at them that is not attempting to effectuate government action in fact if you look at some of my pleadings in this case I point out that Mr. Keeker was making statements far before any petition to government was ever made I also point out that after Mr. Sandholm was removed as a coach from Dixon High School that another gentleman went forward and solicited coaches in the grade school level telling them falsehoods about Mr. Sandholm in late May or June of 2008 there was no petitioning at that stage he'd already been removed as the head basketball coach yet their interpretation and the trial court and the second district's interpretation is that's absolutely immune you can go see anybody in the town of Dixon, Illinois and so long as they are a public employee they're carte blanche you can say anything about them because we're just going to raise section 15 show me in the legislation legislative discussions that Representative Frank intended to eliminate the rights of public employees in this state to pursue a defamation action show me in the written legislative history where anybody decided that they thought that the rights of the individual were going to be trumped by the rights to petition government it's completely silent under the decisions I cited to you earlier you have the right as the court to interpret the statute to prevent these incredible consequences that could happen down the road you have the right to say in this situation we're not going to tolerate people going in and lying about other people if their interpretation is true throw out the school code completely throw it out there is not a teacher who's not protected then they have all these rights and everything but then the citizen can keep coming back and coming back and coming back and saying falsehood after falsehood after falsehood and they're immune in this situation there is no protection for Illinois public employees based on the interpretation of the statute in this manner thank you thank you Mr. Feweger thank you to counsel for the appellees as well case number 111443 Sandholm vs. Kecker is taken under advisement as agenda number 19